## A. T. & E. BALDWIN v. H. M. DOUBLEDAY.

*Sale.    Delivery.    Measurement.    Acceptance.    Evidence.    Agent, Declarations of.*

1. A special verdict, containing inconsistent findings, will be sustained when they are made immaterial by other findings in the same verdict.

2. Where hemlock bark has been sold, delivered, accepted, and the vendee has assumed control of it as owner, the title vests in him at once, although the bark had never been measured; and if it is destroyed by fire the loss falls upon the vendee.

3. The plaintiff entered into a written contract to sell to the defendant 800 cords, more or less, of bark, to be delivered at a place designated, and measured there or in the car at the plaintiff's option.    When a large quantity had been delivered, and the greater part of this measured in the car and shipped, the rest unmeasured was destroyed by fire.    In an action to recover the price, the jury found that the defendant accepted the bark after it was delivered, and that it was the intention of the parties that the property in it should pass to the vendee before it was loaded in the cars; *Held*, that the acceptance operated to pass the title to the bark in gross to the defendant; that there was a waiver of the precedent condition of measurement.

4. OBJECTION TO PART OF AN INTERROGATORY.    Where one, on the taking of a deposition, makes a general objection to a part of an interrogatory, he cannot, on trial, enlarge his objection to include the whole.

5. AGENT, DECLARATIONS OF.    The declarations of an agent are not admissible against the principal unless made at the very time he is doing an act that he was authorized to do, and concerning the act that he is then doing.

GENERAL ASSUMPSIT. Pleas, general issue, and special pleas in bar. Trial by jury, June Term, 1884, Orange County, ROWELL, J., presiding. Judgment for the plaintiffs on a special verdict to recover $1,487.50 for 175 cords of bark burned, also the interest, $89.49, and $4.01, the balance of bark actually carred.

This action was brought to recover the balance of the purchase price of a quantity of hemlock bark bargained and sold by the plaintiffs to the defendant, under a certain written contract between the parties, of which the following is a copy :

"Wells River, Vt., August 2, 1882.

"This is to certify that I have sold to H. M. Doubleday this day what hemlock bark now peeled, and what we may peel this season. The same being 800 cords, more or less, to be measured on the ground or in the car, as most convenient to me, A. T. & E. Baldwin, Jr.

"If measured in the car to be shrunk one inch to foot in height, and one foot inside in length of car. Cash to be paid, $8.50 per cord ; delivered at Groton Pond. Bark to be good and merchantable, and $1,000, to be paid as soon as possible, advanced on same.

(Signed)     A. T. & E. BALDWIN, Jr.
             JAMES B. DARLING, Agent."

The bark was seasonably delivered and of specified quality. The defendant was engaged in carring it, measuring it in the cars, when a fire occurred, which destroyed all the bark which had not been shipped away. The jury found :

Q. 1. Did the defendant accept and assume control as owner of all the bark the plaintiffs placed upon the ground at Groton Pond ?

A. Yes.

Q. 2. Did the defendant exercise any control over any bark except what he loaded into the cars, or do anything to such bark ?

A. Yes.

Q. 3. Was it the intention of the parties, after the making of the contract, that the property in the bark should pass to the defendant when it was piled and lay upon the ground, and before it was loaded into the cars ?

A. Yes.

Q. 4. Did the plaintiffs elect to have the bark measured on the ground?

A. Yes.

Q. 5. Did the plaintiffs request the defendant to so measure it?

A. Yes; that part remaining about the first of May, 1883.

Q. 6. If ye., did defendant, on such request, neglect to attend to such measurement before the bark was burned?

A. Yes.

Q. 7. Did plaintiff put the bark into suitable condition to be measured on the ground, so that it could be examined by the measurer, and an actual measurement thereof made?

A. No.

Q. 8. Did plaintiffs conser. and agree to have the bark measured in the cars?

A. Yes.

Q. 9. Was the bark measured according to the contract?

A. Yes; that portion drawn away.

The defendant introduced testimony tending to show that one Harris was plaintiffs' agent in delivering and measuring said bark, and that he did measure some of it; that the office in which Harris did the plaintiffs' business and kept their books was a few rods from where the defendant's servants loaded the cars; that some of defendant's servants went to Harris at the office, and asked him where they should begin to load bark, and he went and showed them; and in going from the office to the car which they were going to load, Harris said the "bark was to be measured in the car," and that after they reached the car Harris measured it.

This testimony was admitted to impeach Harris; and the defendant claimed that it should also be given the effect of substantive evidence to show plaintiffs' election to have the bark measured in the car; but the court charged the jury that in order to make the declarations of an agent evidence against his principal, it must appear that they were made at the very time that he was doing an act that he was authorized to do, and that they were concerning the act that he was then doing; and as what Harris said when going along the road from the

office to the car as aforesaid, was not said concerning any act he was then doing, his declaration was not evidence against the plaintiffs for the purpose claimed.

The other facts appear in the opinion.

*Lamb & Tarbell* and *Heath & Willard*, for the defendant.

The court should have gathered the intent from the writing, and not submitted it to the jury to find.  1 Add. Con. 222 ; *Shore* v. *Wilson*, 9 C. & F. 565 ; *Preston* v. *Merceau*, 2 Wm. Bl. 1249 ; *Elgee Cotton Cases*, 22 Wall. 187 ; *Terry* v. *Wheeler*, 25 N. Y. 525 ; *Stevens* v. *Santee*, 49 N. Y. 35. The jury have found, in answer to the 9th question, that the plaintiffs elected to have the bark measured in the cars, and they cannot now change that election.  *Smith* v. *Sanborn*, 11 Johns. 59 ; *McNitt* v. *Clark*, 7 Johns. 465 ; 1 Add. Con. 319.

It is a general rule that the title of property sold does not pass to the vendee while anything remains to be done by the vendor, as weighing, measuring, etc.  *Gibbs* v. *Benjamin*, 45 Vt. 124 ; *Parker* v. *Mitchell*, 5 N. H. 165 ; *Ward* v. *Shaw*, 7 Wend. 404 ; *Hutchins* v. *Gilchrist*, 23 Vt. 188 ; *Hale* v. *Huntly*, 21 Vt. 147 ; 7 Am. Law Reg. 239 ; Chit. Con. 396 ; 1 Selw. N. P. 1269 ; 6 East 614.  The court erred in its charge as to the statement made by Harris.  *State* v. *Daley*, 53 Vt. 442.  If a special verdict is contradictory a new trial will be granted.  *Kearney* v. *Railway Co.*, 47 Wis. 634 ; *Fick* v. *Mulholland*, 48 Wis. 310 ; *Cotterill* v. *Cramer*, 59 Wis. 231 ; *State* v. *Duncan*, 2 McCord, 252 ; *Rex* v. *Woodfall*, 5 Burr. 2661 ; *Stearns* v. *Barrett*, 1 Mason 153.

*Smith & Sloan*, for the plaintiffs.

The plaintiffs claimed that there was a complete appropriation of all the bark thus delivered at the place specified in the contract to the defendant, and an acceptance or assent to such appropriation by him ; it was, therefore, a controverted question whether the parties intended that the title to all the bark thus delivered should pass to and vest in the defendant, and

both parties very properly agreed to submit that question to the jury. *Burrows* v. *Whittaker*, 71 N. Y. 291; *Wilkinson* v. *Holliday*, 33 Mich. 386; *Cunningham* v. *Ashbrook*, 20 Mo. 553; *Kelsea* v. *Haines*, 41 N. H. 246; *Phillips* v. *Bristori*, 2 B. & C. 511; *Rhode* v. *Thwaites*, 6 B. & C. 338; 102 U. S. 59; *Riddle* v. *Varnum*, 20 Pick. 280; 2 Benj. Sales, 351, 441; *Bank* v. *Bangs*, 102 Mass. 291; *Dyer* v. *Libby*, 61 Me. 45; 54 Iowa 512; *Boswell* v. *Green*, 25 N. Y. 390; *Brown* v. *Hare*, 3 H. & N. 484. And the jury having settled the fact that the parties intended that the title to all the bark should vest in the defendant when it was piled on the ground, the court properly rendered judgment for the plaintiffs; for the intent of the parties is the controlling thing. *Hatch* v. *Oil Company*, 100 U. S. 124; *Carpenter* v. *Brainerd*, 37 Vt. 145; *Hunt* v. *Thurman*, 15 Vt. 336; *Newhall* v. *Langdon*, 39 Ohio St. 87.

An acceptance presupposes a delivery, and in this case there was what the parties treated as an actual delivery. *Redington & Co.* v. *Roberts*, 25 Vt. 686; Benj. Sales, 1182. The declarations of an agent, in order to bind a principal, must be a part of the *res gestae*. *Upham* v. *Wheelock*, 36 Vt. 27.

The opinion of the court was delivered by

POWERS, J. The written contract of August 2, 1882, was an executory agreement on the part of the plaintiffs to sell to the defendant 300 cords, more or less, of bark peeled and unpeeled, delivered at Groton Pond, at $8.50 per cord, to be measured on the ground or in the car at the option of the plaintiffs.

The quality of the bark is not in dispute; but the parties differ as to the mode of measurement chosen by the plaintiffs, and a special verdict of the jury was taken, in which there are manifestly inconsistent findings. But we think the finding of the jury in answer to the 1st, 2d and 3d special questions submitted to them makes these inconsistent findings immaterial.

An executory agreement for the sale of goods upon special

terms becomes a perfected bargain and sale by a delivery to and acceptance of the goods by the vendee unless fraud or imposition is practiced.

The bark was seasonably delivered at Groton Pond, and the defendant was engaged in loading it into cars when the fire occurred that destroyed the bark that had not been shipped away.

The jury found, upon competent evidence and under proper instructions, that after the bark was delivered upon the ground at Groton Pond the defendant accepted and assumed control as owner of it; and that it was the intention of the parties, after the making of the contract, that the property in the bark should pass to the defendant when it was piled and lay upon the ground, and before it was loaded into the cars.

The acceptance of the bark under the written contract must necessarily be an act subsequent in time to the date of the contract, and is the only act in this case essential to constitute a bargain and sale of the bark. By it the executory becomes an executed agreement. When the defendant accepted the bark on the ground at Groton Pond, the place of delivery, and assumed control of it as owner, the title was at once vested in him, and the measurement, whether on the ground or in the cars, was a ceremony that did not affect the question of title, but merely determined the sum due as purchase money. Under the written contract, if the defendant had elected to stand on his rights as there specified, the title would not pass to him until the plaintiff had delivered and measured the bark bargained to be sold.

When so delivered and measured the defendant was bound to accept the bark under the contract, and pay the stipulated price.

But he elected to accept the bark in gross, and actually took control of it as owner; and this has effect as a waiver of the precedent condition of measurement specified in the writing, and operates to pass the title to the bark in gross.

In the view we take of the acceptance of the bark by the de-

fendant, it is immaterial whether the court gave the proper effect to the declarations of Harris, though we see no error in this respect.

An interrogatory was put to McLean, plaintiffs' witness, as follows : " Where was this bark to be measured ? in the yard where it was delivered, or in the woods before it was delivered ?" An examination of the context in McLean's deposition discloses the patent fact that there were only two possible places of measurement referred to by the witness. The defendant objected to all but the first sentence of this interrogatory. If the evidence was objectionable on the ground that it tended to prove a contract between other parties, and thus could not be received to prove a contract between these parties, the whole of the interrogatory should have been objected to. The first sentence calls, in fact, upon the witness to state which of two places was the place of measurement, and the questioner made the matter no more definite or suggestive by specifying the alternative than he had done in the first sentence.

The judgment is affirmed.